UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| Chambers of<br>**George L. Russell, III**<br>United States District Judge | 101 West Lombard Street<br>Baltimore, Maryland 21201<br>410-962-4055 |

May 5, 2014

MEMORANDUM TO COUNSEL RE:   Carol Johnson Harper, et al. v. Anchor Packing Company, et al.
Civil Action No. GLR-12-460

Ronald F. Hurley, et al. v. Anchor Packing Company, et al.
Civil Action No. GLR-12-462

Dear Counsel:

Pending before the Court are Defendant's, MCIC, Inc. ("MCIC"),[1] Motions for Summary Judgment. (Carol Johnson Harper, et al. v. Anchor Packing Company, et al., No. GLR-12-460 ["Harper"], ECF No. 521); (Ronald F. Hurley, et al. v. Anchor Packing Company, et al., No. GLR-12-462 ["Hurley"], ECF No. 371). The issues have been fully briefed and Plaintiffs' requests for a hearing (Harper, ECF No. 597); (Hurley, ECF No. 435) are denied as to this Defendant.[2] For the reasons outlined below, the Court will grant MCIC's Motions.

On January 12, 2011 and January 13, 2011, Plaintiffs commenced these lawsuits against MCIC, as well as others, alleging injuries sustained as a result of Claude Harper's and Ronald Hurley's alleged exposure to asbestos-containing products at the Key Highway Shipyard ("Shipyard") in Baltimore, Maryland. (See Harper Compl, ECF No. 2); (Hurley Compl., ECF No. 2). On February 14, 2012, Defendant General Electric removed these lawsuits to this Court. (Harper, ECF No. 1); (Hurley, ECF No. 1). Co-Defendants/Third-Party Plaintiffs have filed cross claims/third-party complaints alleging MCIC was solely or partially responsible for Mr. Harper's and Mr. Hurley's injuries and requesting contribution. Plaintiffs allege that Mr. Harper and Mr. Hurley were exposed to asbestos dust released from materials that MCIC supplied.

---

[1] MCIC was formerly known as the McCormick Asbestos Company. Among other work, the McCormick Asbestos Company contracted with shipyards in and around Baltimore, Maryland to install insulation on pipes and other equipment.

[2] Local Rule 105.6 provides that "[u]nless otherwise ordered by the Court . . . all motions shall be decided on the memoranda without a hearing." Local Rule 105.6 (D.Md. 2011) (emphasis added). "[R]ule 78 of the Federal Rules of Civil Procedure, the source of authority for [the local rule], makes it clear that hearings on motions are to be in the discretion of the district courts . . . ." Coakley & Williams Const., Inc. v. Structural Concrete Equip., Inc., 973 F.2d 349, 352 (4th Cir. 1992) (alteration in original) (citing U.S. Fidelity & Guaranty Co. v. Lawrenson, 334 F.2d 464, 466-67 (4th Cir. 1964)); see Fed.R.Civ.P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings.") (emphasis added). Furthermore, "[t]he wisdom of leaving a hearing to the discretion of the district court is obvious." Coakley, 973 F.2d at 352 (citing Lawrenson, 334 F.2d at 466-67).

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). If the nonmoving party has failed to make a sufficient showing on an essential element of her case where she has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Because this case was removed, the Court will consider Maryland substantive law. See Ariz. v. Manypenny, 451 U.S. 232, 241-42 (1981) ("The act of removal permits a trial upon the merits of the state-law question free from local interests or prejudice.") (emphasis added).

Plaintiffs allege negligence (Count I), breach of warranty (Count II), product defect/strict liability (Count III), tortious civil conspiracy (Count IV), and fraudulent concealment (Count V). (See Harper Compl. at 13-14); (Hurley Compl. at 14-15). On September 17, 2013, the Court granted MCIC's Motions for Voluntary Dismissal of Counts II, IV, and V. (See Harper, Order Granting Voluntary Dismissal, ECF No. 537); (Hurley, Order Granting Voluntary Dismissal, ECF No. 373). Because there is no evidence from which a reasonable jury could infer Mr. Harper's and Mr. Hurley's exposure to MCIC's asbestos-containing products was a substantial factor in causing their injuries, the Court will grant MCIC's Motions with respect to Counts I and III.

To survive summary judgment as to the negligence and strict products liability claims, Plaintiffs must create a genuine dispute with respect to two material issues. First, there must be a genuine dispute as to whether Mr. Harper's and Mr. Hurley's exposure to asbestos-containing products was a substantial factor in causing their injuries. Lohrmann v. Pittsburgh Corning Corp., 782 F.2d 1156, 1162 (4th Cir. 1986) (citing Robin Express Transfer, Inc. v. Canton R.R., 338 A.2d 335, 343 (Md. 1975)); accord Restatement (Second) of Torts § 431 (1965). When determining whether there is a genuine dispute with respect to this issue, the Court must evaluate "the nature of the product[s], the frequency of [their] use, the proximity, in distance and in time, of [Mr. Harper and Mr. Hurley] to the use of [the] product[s], and the regularity of the[ir] exposure . . . to the use of [the] product[s]." Eagle-Picher Indus., Inc. v. Balbos, 604 A.2d 445, 460 (Md. 1992). Second, there must also be a genuine dispute as to whether MCIC supplied the asbestos-containing products that generated the dust to which Mr. Harper and Mr. Hurley were exposed. See id. at 462 (finding that regular and proximate contact between the plaintiff and the asbestos-containing products was not enough to hold the defendant liable because the plaintiff also had the burden of proving that the defendant was responsible for supplying the products either as a seller or an installer).

It is undisputed that MCIC supplied asbestos-containing products to the Shipyard during the years Mr. Harper and Mr. Hurley worked there. Mr. Harper worked at the Shipyard in 1966, 1967, 1970, 1971, 1972, and the third calendar quarter of 1973. (See Harper, Def.'s Mot. Summ. J. Ex. 2, at 1, ECF No. 521-3). Mr. Hurley worked at the Shipyard from 1965 to 1984. (Hurley Aff. at 2, ECF No. 406-1). Mr. Gist, Armstrong Contracting & Supply's ("Armstrong") construction superintendent between 1963 and 1971, testified that after 1967, Armstrong began to perform extensive pipecovering work at the Shipyard. (See Harper, Gist Aff. at 7, ECF No. 556-5); (Hurley, Gist Aff. at 7, ECF No. 406-4). Because Armstrong frequently did not have enough asbestos insulation materials to complete the pipecovering projects at the Shipyard, Armstrong would purchase these materials from other insulation contractors, including Wallace & Gale, MCIC, and Reid Hayden. (See Harper, Gist Aff. at 7); (Hurley, Gist Aff. at 7). Plaintiffs proffer invoices which show that MCIC sold asbestos-containing products to the Shipyard between 1973 and 1976. (See Hurley, Pls.' Resp. Opp'n Def.'s Mot. Summ. J. ["Hurley Opp'n"] Ex. 5 ["Invoices"], at 55, 73, 76,

2

82, 87, 88, 90, 91, 96, 97, 100, 102, 103, ECF No. 406-5).[3]  Finally, Charles Martin and Mr. Hurley testified that MCIC installed asbestos-containing insulation during the years Mr. Harper and Mr. Hurley worked at the Shipyard.  (See Harper, Martin Dep. 17:3-16, 19:19-21:2, 28:10-20, 91:2-92:2, Aug. 27, 2013, ECF No. 556-4); (Hurley Dep. 117:4-118:4, 124:11-125:1, July 25, 2013, ECF No. 406-2); (Hurley Aff. at 3).

Although MCIC supplied asbestos-containing products to the Shipyard when Mr. Harper and Mr. Hurley worked there, there is no evidence from which a reasonable jury could infer these products were frequently used or that Mr. Harper and Mr. Hurley were regularly and proximately exposed to them.

1. **Asbestos-Containing Material MCIC Directly or Indirectly Sold to the Shipyard**

First, Mr. Harper and Mr. Hurley have established that they were working at the Shipyard during the period in which MCIC sold directly to the Shipyard asbestos-containing millboard and rollboard.[4]  Plaintiffs have failed to produce any evidence, however, that either Mr. Harper or Mr. Hurley were exposed to dust from MCIC millboard or rollboard.  (See Invoices at 96, 97, 102, 103); (Hurley Dep.); (Hurley, Oakes Dep., July 31, 2013, ECF No. 406-3); (Hurley Aff. at 2) (identifying pipecovering, block, cement, and cloth as the asbestos-containing products to which Mr. Hurley was exposed at the Shipyard).

Next, in support of his testimony that he was exposed to asbestos-containing cloth when reinsulating pipes, (see Hurley Aff. at 3), Mr. Hurley produced two invoices indicating the sale of asbestos cloth to the Shipyard, (see Invoices at 73, 100).  Without other evidence that the Shipyard frequently used MCIC's asbestos cloth, however, these two invoices are not sufficient to raise a genuine dispute as to whether Mr. Hurley was regularly exposed to dust from MCIC's asbestos cloth.  See Owens-Corning Fiberglas Corp. v. Garrett, 682 A.2d 1143, 1157 (Md. 1996) (finding a legally sufficient case of substantial factor causation where in addition to two invoices showing sales of the Kaylo pipecovering, there was testimony from two witnesses that Kaylo pipecovering was frequently used at the facility during the relevant period).

Further, Plaintiffs similarly fail to produce evidence sufficient to raise a genuine dispute that they were regularly and proximately exposed to MCIC asbestos-containing insulation sold to the Shipyard through Armstrong.  In order to raise a genuine dispute as to whether Mr. Harper or Mr. Hurley were exposed to asbestos-containing insulation that MCIC supplied, a witness must specifically identify MCIC's

---

[3] Although these invoices are part of the record in Hurley, Plaintiffs incorporated them by reference in their Harper Opposition.  (See Harper, Pls.' Resp. Opp'n Def.'s Mot. Summ. J. ["Harper Opp'n"], at 8, ECF No. 556).

[4] The overwhelming majority of the invoices Plaintiffs produce indicate sales of "Calsilite" pipe and block insulation and Johns-Manville "Thermo-12" pipe and block insulation.  While Plaintiffs argue these materials contained asbestos, they proffer no evidence to support this argument.  MCIC proffers undisputed evidence that the asbestos-containing version of Calsilite was only produced until October 1971.  (See Harper, Def.'s Reply Pls.' Opp'n Mot. Summ. J. ["Harper Reply"] Ex. 2, at 5, ECF No. 571-2); (Hurley, Def.'s Reply Pls.' Resp. Opp'n Mot. Summ. J. ["Hurley Reply"] Ex 2, at 5, ECF No. 418-2); (see also Harper Reply Ex. 1, at 4, ECF No. 571-1) (stating the Calsilite MCIC purchased in 1971 was "asbestos-free"); (Hurley Reply Ex. 1, at 4, ECF No. 418-1) (same).  The earliest invoice produced by Plaintiffs is dated December 16, 1971, which is three months after production of the asbestos-containing version of Calsilite ceased.  (See Invoices at 1).  MCIC also proffers undisputed evidence that Thermo-12 was the non-asbestos-containing replacement for Johns-Manville's asbestos-containing "Thermobestos."  (See Harper Reply Ex. 3, at 3, ECF No. 571-3); (Hurley Reply Ex. 3, at 3, ECF No. 418-3).

asbestos-containing insulation as being present where Mr. Harper or Mr. Hurley worked. See Roehling v. Nat'l Gypsum Co. Gold Bond Bldg. Prods., 786 F.2d 1225, 1229 (4th Cir. 1986) (reversing summary judgment on the issue of exposure where plaintiff's witnesses specifically identified two defendants' asbestos-containing products as being present in the area where plaintiff worked); id. at 1228 (holding that circumstantial evidence of exposure "need only establish that [plaintiff] was in the same vicinity as witnesses who can identify the products causing the asbestos dust . . . .") (emphasis added); White v. Dow Chem. Co., 321 F.App'x 266, 274-75 (4th Cir. 2009) (affirming summary judgment where the "[p]laintiff was unable to identify the specific herbicides [decedent] was actually exposed to . . . .") (emphasis added); see also Garret, 682 A.2d at 1156-57 (finding there was legally sufficient evidence that the plaintiffs were exposed to asbestos where two witnesses specifically identified the defendant's products as present where the plaintiffs worked). Plaintiffs, however, have provided no such identification witness.

**2. Asbestos-Containing Material MCIC Installed at the Shipyard**

Finally, Mr. Martin and Mr. Hurley successfully raise a genuine dispute as to whether they were proximately exposed to dust from asbestos-containing insulation that MCIC installed. (See Martin Dep. 17:3-16, 19:19-21:2, 24:3-11, 28:10-20, 91:2-92:2); (Hurley Dep. 117:4-118:4, 124:11-125:1); (Hurley Aff. at 3). They do not, however, proffer any evidence of the frequency with which Mr. Harper and Mr. Hurley worked around MCIC installers.[5] Consequently, a reasonable jury would have to speculate as to the regularity with which Mr. Harper and Mr. Hurley were exposed to dust from insulation that MCIC installed. See Garrett, 682 A.2d at 1157 (finding substantial factor causation where the evidence showed the plaintiff was present for every boiler room job in the 1950's); ACandS, Inc. v. Godwin, 667 A.2d 116, 125 (1995) (finding substantial factor causation where the evidence showed the plaintiff was required to enter one part of the facility five to six times a day and another part of the facility on a less frequent basis, but over the course of two decades). Plaintiffs "cannot create a genuine issue of material fact through mere speculation . . . ." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) (citing Barwick v. Celotex Corp., 736 F.2d 946, 963 (4th Cir.1984)).

Accordingly, because there is no evidence from which a reasonable jury could infer MCIC's asbestos-containing products were frequently used at the Shipyard or that Mr. Harper and Mr. Hurley were regularly and proximately exposed to them, there is no genuine dispute as to whether those products were a substantial factor in causing Mr. Harper's or Mr. Hurley's injuries.

For the foregoing reasons, MCIC's Motions for Summary Judgment (Harper, ECF No. 521); (Hurley, ECF No. 371) are GRANTED and judgment will be entered in its favor. Despite the informal nature of this memorandum, it shall constitute an Order of the Court, and the Clerk is directed to docket it accordingly and terminate MCIC from both cases.

Very truly yours,

/s/

George L. Russell, III
United States District Judge

---

[5] Mr. Hurley testified that he did not know how often MCIC worked at the Shipyard or how often he worked around MCIC installers. (See Hurley Dep. 130:2-16).