UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| Chambers of<br>**George L. Russell, III**<br>United States District Judge | 101 West Lombard Street<br>Baltimore, Maryland 21201<br>410-962-4055 |

May 5, 2014

MEMORANDUM TO COUNSEL RE:    Carol Johnson Harper, et al. v. Anchor Packing Company, et al.
Civil Action No. GLR-12-460

Dear Counsel:

Pending before the Court is Defendants', Foster Wheeler LLC and Foster Wheeler Energy Corporation (collectively "Foster Wheeler"), Motion for Summary Judgment. (ECF No. 514). The issues have been fully briefed, and Plaintiffs' request for a hearing (ECF No. 597) is denied as to this Defendant.[1] For the reasons outlined in specific detail below, the Court will grant the Motion.

On January 12, 2011, Plaintiffs commenced this lawsuit against Foster Wheeler, as well as other Defendants, in the Circuit Court for Baltimore City, alleging injuries sustained as a result of Mr. Harper's alleged exposure to asbestos-containing products at the Key Highway Shipyard ("Shipyard") in Baltimore, Maryland. On February 14, 2012, Defendant General Electric removed the lawsuit to this Court pursuant to 28 U.S.C. § 1442(a)(1) (2012). (ECF No. 1). Co-Defendants/Third-Party Plaintiffs have filed cross claims/third-party complaints alleging Foster Wheeler was solely or partially responsible for Mr. Harper's injuries and requesting contribution. Plaintiffs allege Mr. Harper was exposed to asbestos fibers released from Foster Wheeler's insulation during the course of his employment at the Shipyard.

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). In a situation in which the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In considering Foster Wheeler's Motion, the Court will accept Plaintiffs' evidence as true and will draw all reasonable inferences in their favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-59 (1970)). Also, because this case was removed, the Court will consider Maryland

---

[1] Local Rule 105.6 provides that "[u]nless otherwise ordered by the Court . . . all motions shall be decided on the memoranda without a hearing." Local Rule 105.6 (D.Md. 2011) (emphasis added). "[R]ule 78 of the Federal Rules of Civil Procedure, the source of authority for [the local rule], makes it clear that hearings on motions are to be in the discretion of the district courts . . . ." Coakley & Williams Const., Inc. v. Structural Concrete Equip., Inc., 973 F.2d 349, 352 (4th Cir. 1992) (alteration in original) (citing United States Fidelity and Guaranty Co. v. Lawrenson, 334 F.2d 464, 466–67 (4th Cir. 1964)); see Fed.R.Civ.P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings.") (emphasis added). Furthermore, "[t]he wisdom of leaving a hearing to the discretion of the district court is obvious." Coakley, 973 F.2d at 352 (citing Lawrenson, 334 F.2d at 466-67).

substantive law. See Ariz. v. Manypenny, 451 U.S. 232, 241-42 (1981) ("The act of removal permits a trial upon the merits of the state-law question free from local interests or prejudice.") (emphasis added).

      Plaintiffs allege negligence (Count I), breach of warranty (Count II), product defect/strict liability (Count III), tortious civil conspiracy (Count IV), and fraudulent concealment (Count V). (See Compl. at 13-14, ECF No. 2). On September 16, 2013, the Court granted Foster Wheeler's Motion for Voluntary Dismissal of Counts II, IV, and V. (See Order Granting Voluntary Dismissal, ECF No. 510). As to negligence and strict products liability, because there is no genuine dispute as to whether Foster Wheeler manufactured or supplied the insulation to which Mr. Harper was allegedly exposed, the Court will grant summary judgment in favor of Foster Wheeler with respect to Counts I and III.

      Under Maryland law, in order to prevail on claims of negligence or strict products liability, the plaintiff must prove proximate causation. See Pittway Corp. v. Collins, 973 A.2d 771, 786 (Md. 2009) ("It is a basic principle that '[n]egligence is not actionable unless it is a proximate cause of the harm alleged.'" (alteration in original) (quoting Stone v. Chicago Title Ins., 624 A.2d 496, 500 (Md. 1993))); see Owens-Illinois, Inc. v. Armstrong, 604 A.2d 47, 52 (Md. 1992) ("Causation is a necessary element of any strict liability action." (citing Phipps v. General Motors Corp., 363 A.2d 955, 958 (Md. 1976))). "To establish proximate causation in Maryland, the plaintiff must introduce evidence which allows the jury to reasonably conclude that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result." Lohrmann v. Pittsburgh Corning Corp., 782 F.2d 1156, 1162 (4th Cir. 1986) (citing Robin Express Transfer, Inc. v. Canton R.R., 338 A.2d 335, 343 (Md. 1975)); accord Restatement (Second) of Torts § 431 (1965).

      The Court of Appeals of Maryland has established a "frequency, regularity, proximity" test for substantial factor causation in asbestos-exposure cases. See Eagle-Picher Indus., Inc. v. Balbos, 604 A.2d 445, 460 (Md. 1992) (finding that when determining whether exposure to asbestos was a substantial factor in causing injuries to a plaintiff, "the factors to be evaluated include the nature of the product, the frequency of its use, the proximity, in distance and in time, of a plaintiff to the use of a product, and the regularity of the exposure of that plaintiff to the use of that product.") (emphasis added). "Whether the exposure of any given bystander to any particular supplier's product will be legally sufficient to permit a finding of substantial-factor causation is fact specific to each case." Id.

      Plaintiffs contend Mr. Harper was exposed to asbestos dust when Shipyard contractors removed and installed asbestos-containing insulation on Foster Wheeler boilers. (See Pls.' Answer Mot. Summ. J. ["Opp'n"] at 5, ECF No. 567). Plaintiffs further contend this exposure was a "substantial factor in causing [Mr.] Harper's mesothelioma and death." (Id.). To support these contentions, Plaintiffs rely on the deposition of Mr. Harper's coworker, Nathaniel Davis. Mr. Davis testified that he worked with Mr. Harper on five different ships while the two were welders at the Shipyard: (i) the USS Caloosahatchee ("AO 98"); (ii) the USS Canisteo ("AO 99"); (iii) the American Accord; (iv) the Overseas Aleutian; and (v) a caustic soda barge operated by the Stewart Transportation Company. (See Davis Dep. 26:8-28:10, Jan. 24, 2013, ECF No. 514-4). In its Answers to Plaintiffs' Interrogatories, Foster Wheeler acknowledges that it sold boilers to the United States Navy for construction of the AO 98, the AO 99, and the Overseas Aleutian.[2] (Id.). Therefore, the Court will infer that these three ships had Foster Wheeler boilers on them when they came to the Shipyard for repairs and conversions in the 1960's.[3]

---

      [2] Specifically, in 1944, Foster Wheeler had contracts to supply marine type "D" boilers for the construction of the AO 99 and the AO 98. (See Defs.' Mot. Summ. J. ["Mot. Summ. J."] Ex. D, at 14, ECF No. 514-7). The following year, Foster Wheeler had contracts to "[f]urnish miscellaneous spare parts as

Of those three ships, the only one on which Mr. Harper worked in the vicinity of Foster Wheeler boilers was the AO 98.  (See Davis Dep. 31:1-54:5).  Accordingly, the Court will only address the insulation removal and installation performed aboard the AO 98.  Mr. Harper worked on the AO 98 for one month, during which time he welded pipelines, boilers, and heating coils.  (See id. 32:15-33:3, 33:7-11, 51:13-17).  He performed this work in the boiler room and in the "vicinity" of contractor insulators that removed and installed insulation on the boilers and pipelines.  (See id. 35:18-21, 39:6-40:5, 42:2-5; 42:8-14, 47:6-10).

In order to defeat Foster Wheeler's Motion with respect to negligence and strict products liability, Plaintiffs must demonstrate a genuine dispute as to whether Foster Wheeler manufactured or supplied - either by selling separately or by incorporating into the finished boilers they sold for the AO 98 - the insulation that created the dust.  See Christian v. Minn. Mining & Mfg. Co., 126 F.Supp.2d 951, 958 (D.Md. 2001) ("[T]here is no duty of care owed [to a plaintiff] if the manufacturer did not produce the allegedly defective product.");[4] id. ("Under Maryland law . . . one manufacturer is not to be held liable [under a negligence theory] for the product of another."); id. ("Plaintiffs must prove that Defendant actually manufactured or distributed the product which purportedly caused plaintiff's injury."); Phipps, 363 A.2d at 957 ("One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer . . . if . . . the seller is engaged in the business of selling such a product . . . ." (emphasis added) (quoting Restatement (Second) of Torts § 402A (1965))); Ford Motor Co. v. Wood, 703 A.2d 1315, 1331 (Md.Ct.Spec.App. 1998) abrogated on other grounds by John Crane, Inc. v. Scribner, 800 A.2d 727 (Md. 2002) ("[A] . . . manufacturer may be held liable in damages for defective component parts manufactured by another only if the . . . manufacturer incorporated the defective component into its finished product.") (emphasis added).  Because there is no genuine dispute as to whether Foster Wheeler manufactured or supplied the insulation that was removed and installed in Mr. Harper's presence, the Court will grant summary judgment in favor of Foster Wheeler with respect to Count III.

Plaintiffs argue there is sufficient circumstantial evidence to create a genuine dispute as to whether Foster Wheeler incorporated asbestos-containing insulation with the boilers they sold for the AO 98.[5]  (See id. at 7-8).  In support of this argument, Plaintiffs proffer excerpts from a schematic, dated January 17, 1951, of a marine type "D" boiler and a proposal, dated April 12, 1954, to supply two marine type "D" boilers for construction of a ship named the Sinclair.  (See Opp'n Ex. 6 ["Schematic"], ECF No. 567-7; id. Ex. 7 ["Proposal"], ECF No. 567-8).  The schematic contains a "Key to Insulation" that lists various insulation materials and their thicknesses.  (See Schematic at 2, 3).  Plaintiffs argue, without citing any affidavits for corroboration, all of these materials are asbestos-containing.  (See Opp'n at 7).  The proposal suggests that the insulation on the boilers would contain asbestos millboard.  (See Proposal at 4).  Plaintiffs ask the Court to infer that Foster Wheeler incorporated, on the marine type "D" boilers they sold for the

---

requested."  (Id.).  In 1952, Foster Wheeler had a contract to supply type "D" oil-fired boilers for the construction of the Overseas Aleutian.  (Id. at 14-15).

[3] The AO 98 was at the Shipyard from August 1966 through September 1969, (see Mot. Summ. J. Ex. K, at 3, ECF No. 514-14); the AO 99 was at the Shipyard from April 1965 through September 1968, (see id. at 2); and the Overseas Aleutian was at the Shipyard from July 1969 through January 1971, (see id. at 4).

[4] "In Maryland, a plaintiff asserting a negligence claim must establish that (1) the defendant owed the plaintiff a duty; (2) the defendant breached that duty; and (3) the breach proximately caused the plaintiff's injury."  Christian, 126 F.Supp.2d at 958.

[5] Plaintiffs contend it was this original Foster Wheeler insulation that contractor insulators removed from Foster Wheeler boilers in Mr. Harper's presence aboard the AO 98 in the late 1960's.  (See Opp'n at 7).

3

AO 98 in 1944, the same insulation depicted in the 1951 schematic and the 1954 proposal. The Court declines to do so, however, because not only were the schematic and the proposal prepared seven and ten years after Foster Wheeler sold the boilers for the AO 98, but also Plaintiffs do not provide any evidence to support an inference that the AO 98 boilers had the same general arrangement as the boilers in the schematic and the proposal. See Wood, 703 A.2d at 1329-30 (determining there was insufficient evidence to create a jury question on substantial factor causation where the asbestos-containing product was shipped to an entirely different location during an entirely different time period than where and when the defendant allegedly supplied the asbestos-containing products to which the plaintiff was exposed).

Further, Plaintiffs contend Foster Wheeler supplied the asbestos-containing insulation to which Mr. Harper was exposed when Shipyard contractors installed new insulation on Foster Wheeler boilers aboard the AO 98. (See Opp'n at 5). In order to raise a genuine dispute as to whether Mr. Harper was exposed to asbestos-containing products that Foster Wheeler supplied, a witness must specifically identify Foster Wheeler's asbestos-containing products as being present where the plaintiff worked. See Roehling v. Nat'l Gypsum Co. Gold Bond Bldg. Products, 786 F.2d 1225, 1229 (4th Cir. 1986) (reversing summary judgment on the issue of exposure where plaintiff's witnesses specifically identified two defendants' asbestos-containing products as being present in the area where plaintiff worked); see id. at 1228 (holding that circumstantial evidence of exposure "need only establish that [plaintiff] was in the same vicinity as witnesses who can identify the products causing the asbestos dust . . . .") (emphasis added); see White v. Dow Chem. Co., 321 F.App'x 266, 274-75 (4th Cir. 2009) (affirming summary judgment where the "[p]laintiff was unable to identify the specific herbicides [decedent] was actually exposed to . . . .") (emphasis added); see also Owens-Corning Fiberglass Corp. v. Garret, 682 A.2d 1143, 1155-57 (Md. 1996) (finding there was legally sufficient evidence that plaintiffs were exposed to asbestos where two witnesses specifically identified defendants' products as present where the plaintiffs worked). Because there is no such identification in this case, there is insufficient evidence to establish a genuine dispute as to whether Foster Wheeler supplied the insulation to which Mr. Harper was exposed. Accordingly, the Court will grant summary judgment in favor of Foster Wheeler with respect to Count III.

For the foregoing reasons, Foster Wheeler's Motion for Summary Judgment (ECF No. 514) is GRANTED and judgment will be entered in its favor. Despite the informal nature of this memorandum, it shall constitute an Order of the Court, and the Clerk is directed to docket it accordingly and terminate Foster Wheeler from this case.

Very truly yours,

/s/
_____
George L. Russell, III
United States District Judge